MR. Chief Justice Johnson, delivered the opinion of the court. The complainant charges in her bill that, as the widow of the late Robert Crittenden, she is entitled to dower in lots numbered seven, eight and nine, in block numbered thirty-four in the city of Little Rock, with the improvements thereon. Her demand is resisted by the defendant upon several distinct grounds. The bill states that Robert Crittenden, the alleged husband, departed this life intestate, in the month of December, A. D. 1834; that he was lawfully seized and possessed of the premises during the coverture, and that during such coverture and whilst said lots were unincumbered by any judgment or other lien, the said Robert sold the same to the defendant, who is still in possession thereof and resident thereon, and that she never has, in any manner or form, released or relinquished her dower therein. The defendant on his part, by way of defence, in the first place, denies that the intestate ever was seized of the premises, but that he held them merely in trust for one Robert C. Oden, and that he sold them as such trustee. Secondly, that he, the husband, having died insolvent, she is not, under the law then in force, entitled to any dower whatever. Thirdly, that the title, both legal and equitable, remained in the United States until the twenty-fifth of September, A. D. 1839, and that on that day a deed patent issued from the General Government in due- form of law to one Roswell Beebe, for the identical property now in controversy. Fourthly and lastly, that in no event can she be entitled to dower in the improvements, the whole having been made since the purchase. To the answer setting up these facte the complainant entered her general replication, thereby denying the truth of the answer, and also the sufficiency of the matter alleged in it to bar her suit. We will proceed to examine these, several grounds of defence in the order here stated. The first point, that presents itself, is whether it now lies in the mouth of the defendant to controvert the title of Crittenden, his grantor. It is contended that he, having accepted a deed for the land and having also gone into possession with the deed, is therefore estopped from disputing the title of Crittenden. It was held in Small vs. Procter, 15 Mass. 499, that the grantee of land may deny the seizen or title of his grantor, as every day happens in actions of covenant for title. To the same general effect is the case of Gaunt vs. Wainman, 3 Bing. N. C. 69, in which it was detenuined by the C. B. that to a writ of dower, the tenant, who held by conveyance from the husband, might plead that the latter was not seized of an estate in the land whereof the demandant could be endowed, and that, in support of this plea, he was not estopped from showing the land to be leasehold, although it was set forth as freehold in the deed to himself, which was produced on the trial. It was said by Tindall, C. J. that if an estoppel existed, it must of necessity be mutual; but that it could not be contended that if a husband conveyed freehold as leasehold his widow would be concluded from showing the real nature of the estate; and he therefore held that the same right existed in the tenant. In the case of Osterhant vs. Shoemaker, 3 Hill Rep. 578, the Supreme Court of New York held that “Although a tenant cannot question the right of his landlord, a grantee in fee may hold adversely to the grantor, and there can be no good reason why he should not be at liberty to deny that the grantor had any title. There is no estoppel where the occupant is not under an obligation express or implied, that he will at some time .or in some event surrender the possession. The grantee in fee is under no such obligation. He does not receive the possession under any contract express or implied that he will ever give it up. He takes the land to hold for himself, and to dispose of at pleasure. He owes no faith or allegiance to the grantee and he does him no wrong when he treats him as an utter stranger to the- title.” It was held also in that case, that the cases which had determined that the grantee of the husband is estopped from denying the demandant’s title in dower, was only to be followed, because the rule was so settled in New York, and not because they rested on any sound principle. We have been forcibly struck with the remark of the court in the case just referred to, that the cases which had determined that the grantee of the husband is estopped from denying the demandant’s title in dower, were only to be followed, because the rule was so settled in New York, and not because they rested on any sound principle. Why is it that the grantee is estopped from denying the wife’s right to dower, when he is not so estopped from denying the title of the husband ? Her title to dower necessarily grows out of, and is wholly dependent upon the title of her husband; and if ' so, it would seem to be absurd to say that although the grantee could plead a want of title in the grantor, and save himself i harmless from any consequences that could possibly flow from such a state of case, and yet not possess the power to protect himself against the mere incidents which could only arise upon a good title. We cannot perceive any good reason for such a distinction, and feel constrained to think that it must rest for its support upon senseless technicality alone. If the rule were so settled in this State, though unsupported by reason, we might or might not uphold it, for the sake of consistency and uniformity of decision. But as there is no adjudication of our own court upon the point we conceive ourselves not only at liberty, but also in duty bound to settle tho question according to our own views of the reason and principles of law1- bearing upon it. If a defendant in dower is not permitted to dispute the de-mandant’s right, it must be upon the ground that he is estopped by having accepted the estate from her husband, and having also entered into possession in pursuance of the purchase. We are free to admit that it is difficult to conceive how the doctrine of estoppel should apply in the case of the' wife who is in pursuit of her dower, when it would be wholly unavailing in a suit between the husband and the grantee. Such a distinction can derive no support either from principle or analogy. Smith in his leading cases, says, “But when under an agreement to purchase, the vendee obtains and keeps possession of land, it may be admitted that he is concluded in a suit for the purchase money from showing as a defence, a defective title in the vendor. Jackson vs. Hotchkiss, 6 Cowen 401. This however evidently depends upon the doctrine of equitable estoppel is pais, already considered. Upon the same ground arises the mutual estoppel of mortgager and mortgagee, which is admitted in England, while that of an ordinary deed of conveyance is denied, Doe vs. Mifton, 4 Ad. & Ell. 809, Doe vs. Nickers, id. 782, and is generally recognized in this country. Barber vs. Harris. 16 Wend. 667. In like manner the estoppel of the tenant and those claiming under him, to deny his landlord’s title, would appear to belong to the same class of constructive or equitable estoppels. It did not exist at common law, where, apart from the conclusion of a deed indented, the lessee might always dispute the estate of the lessor. Litt. sect. 58. Coke Litt. 47 b. Chittle vs. Pound, 1 Ld. Raym. 746. Lewis vs. Willis, 1 Wils. 314. Kemp vs. Goodal, 1 Salk. 273, Gregory vs. Dodge, 4 Bing. 474. Davs vs. Shoemaker, 1 Rawle 135. Nor does it at present arise except in those actions where the possession of the estate is brought into question. Thus in re-plevin the defendant may traverse the title set forth in the avow-ry, and the replication of a parol demise accepted by him will not be an estoppel. Davis vs. Tyler, 18 John. 490. Its origin must therefore be sought in the general principle that where a party has kept or obtained the possession of land, which he otherwise would not have had, by means of an agreement or understanding that he shall he estopped from setting forth any thing in opposition to its terms or intent in a suit brought in order to recover such possession. This principle has of necessity been called into being by that feature of the action of ejectment which requires an absolute possessory title in the plaintiff, and makes, in its absence, the mere fact of possession decisive in favor of the defendant. In the case of a tenant this estoppel evidently appears to be merely equitable, since if it were a common law incident of the position held by him towards the lessor it would apply to all actions, and he would be as much precluded from denying his landlord’s title in debt as in ejectment.” It is perfectly apparent therefore that the whole doctrine of estoppel is founded upon a contract, either express or implied that the grantee will, at some time or in some event, surrender possession.' It was expressly held in the case decided in New York, already referred to, that no such contract exists as between the grantor and grantee of the fee, and there is certainly as little ground for such contract as between the grantee and the widow of the grantor. It must be admitted that there is some conflict between the authorities upon the point in regard to the rights of the widow, yet as one of the highest and most respectable courts of our country, which holds that the grantee is estopped to deny the title in a suit for dower, has with much candor and frankness admitted that though such is the rule in their State, it is not founded upon any sounds principle, we feel ourselves at liberty to adopt such a course as may seem best to comport with analogy and sound principle. If the doctrine of estoppel is founded alone upon a contract, express or implied, that the possession shall be restored, and that it is, we think is fully sustained by the authorities, it is then clear that the defendant in this case cannot be said to be estopped from contesting her right. After this position is fully sustained by the court of Appeals of New York in the case of Sparrow vs. Kingman, 1 Comstock Rep. 242, decided at the April Term, 1848, in that court; where this whole doctrine of estoppel was re-examined with much learning after elaborate research, and the cases of Sherwood vs. Vanderburg, 2 Hill 303, Brown vs. Potter, 17 Wend. 164, and other similar cases were overruled, and the doctrine distinctly laid down that “in an action for dower the grantee in fee of the husband is not concluded from affirmatively controverting the seizin ol the latter.” And although Judge Bronson dissented, he placed his dissent with his brother judges, upon the sole ground in express terms, that “after an erroneous decision touching rights of property has been followed thirty or forty years, or even a much less time the court cannot retrace their steps without committing a new error nearly as great as the one at first.” At-the same time avowing that he still entertained the “opinion that the doctrine of estoppel had been originally (in that State) improperly applied to this class oi cases.” And it is there said that the doctrine as we lay it down is now the settled law in England and in Massachusetts; and the case of Tevis vs. Steele, 4 Mon. 339, shows that it is so held in Kentucky. We can therefore entertain no doubt on the point both upon) principle and authority, and we are therefore clear that Wood-ruff was authorized to show affirmatively that the husband of the petitioner never held any real beneficiary interest in the lots in which dower was sought, but the mere legal title unconnected with such beneficial interest. But as to the question of fact whether or not this point of the defence was established, it has to be determined by the testimony. And although the authorities show that in a court of equity it is admissible to prove a trust in opposition to a deed or other written instrument they are fully up to and distinct, that the evidence offered for this purpose must be of so positive a character as to leave no doubt of the fact. (Harrison vs. McMennomy. 2 Edw. Ch. R. 256. Bottsford vs. Burr. 2 John. Ch. R. 409. Hart vs. Hawkins, 3 Bibb 506. Malin vs. Malin, 1 Wend. 648. Foote vs. Colvin, 3 John. R. 222. Boyd vs. McLean, 1 John. Ch. R. 590. Wallace vs. Duffield, 2 Serg. & Rawle 527 Snelling vs. Utterback, 1 Bibb 609. Sugden on Vendors 444, 446.) And whpn brought to this test the evidence produced by Woodruff seems to us to be insufficient. The deposition of Chester Ashley, upon which alone the question depends, in the state of the pleading and evidence in this case, in our opinion, falls short of establishing the defence as it by no means excludes the idea that although Oden was the then owner of the lots, as Crittenden admitted, and there had never been in fact paid any consideration for the conveyance to Crittenden, made sometime in the previous year, the conveyance might not have been originally upon a consideration or contract that had been afterwards satisfied or rescinded, which was as potent to invest Crittenden with a beneficial interest and estate, as a consideration that had been actually paid, in the cautious language of the witness. And especially so as the memory of the witness from lapse of time, as he admitted, was totally at fault as to the reason or occasion why the conveyance was made irom Oden to Crittenden ; and consequently, although he remembered some explanation had been given him as to this, he was unable to throw any light at all on this material part of the transaction. The next point presents the question whether or not, inasmuch as it is shown that the husband died insolvent, the widow was entitled to any dower at all in real estate conveyed by him in his life-time and in which she did not relinquish her title of dower. And this must be determined by the law in force at the time of the husband’s death, as it is a maxim that “ the wife has a title of dower and the widow -Aright.” (Max. in Conv. Sec. 73, 228, cited in Tate, 98. 1 Tuck. Lee. B 2 p 58): and in looking ' into the Territorial laws (the husband’s death having occurred while they were in force) we have no difficulty in arriving at the conclusion that the insolvency of the husband had no effect to deprive the widow of dower in Real Estate as against the alienee of the husband. . The old books are full of intimations that dower was a favorite of the common law. In Lilly's Abr. 666 (Chilton's Probate Court law and Prac. 372) it is said that “Dower is favored in law in a high degree, and is held sacred only next to life and liberty.” Consequently any statute which disparages or would seem to diminish it must be strictly construed. But in this instance no very strict construction is necessary, because, to cut the widow off from dower as against the alienee of her husband is neither within the letter or the spirit of the Territorial laws. By its letter she is only refused dower “ in the lands and tenements or real estate of her husband,” when he shall die and “ not have sufficient goods, chatties, credits, effects, lands and tenements from the sale and product of which his funeral charges, allowances of household furniture and provisions for the wife as ■{therein) provided, (these) being always paid iuv> and t-pied, and when they are not more than a suili .deucy to ¡¡ay mid discharge his just debts.” The spirit of the law was to pjovide for creditors by diminishing the dower of the wife, for which she was allowed some equivalent, but they could in no way have been benefitted by depriving the wife of dower in lands aliened by the husband, in which she had not relinquished her title; and such cases were therefore not within the reason of the law. The doctrine laid down in the case of Outlaw et al vs. Yell, Gov., &c., (3 Eng. 345,) has reference alone to the estate in the bandssof the executor or administrator, and we are clear that such never was the law, as to this point. The next ground of objection is that the title, both legal and equitable, remained in the United States until the twenty-fifth of September, A. D. 1839, and that on that day a deed patent issued from the General Government, in due form of law to one Roswell Beebe, for the identical property now in controversy. It having already been decided that the defendant is at .liberty to dispute his grantor’s title, even if necessary to defeat his widows’s right to dower, it only remains to be seen whether the evidence adduced is sufficient to establish the issue. A patent, from the United States to Roswell Beebe, for certain lands, was produced, and rend upon the trial of the cause. That deed contained no intrinsic evidence of the fact that, the lots in question were embraced within the metes and bounds of the lands conveyed by it, and the only evidence tending to establish that essential point is to be found in the deposition of Geo. C. Watkins and Gordon N. Peay, witnesses, who testified in the cause. These depositions were excepted to at the time by the complainant’s counsel upon the following grounds : 1st. That the notice served on her attorney was insufficient, in this, that it notified him that depositions would be taken conditionally, whereas, by the law of the land, it should have been to take depositions absolutely: 2d. That depositions in a proceeding of this nature must be taken absolutely and not conditionally: 3d. That if said depositions were correctly taken conditionally, or de bene esse on such notice, they cannot be read on the trial or hearing of this cause so submitted, because there has been no showing why the said witnesses, Gordon N. Peay and George C. Watkins, so deposing, were not personally present to testify on said trial or hearing: 4th. That said notice is, that depositions would be taken on the 8th, 9th and LOth days of January, and that such depositions appear to have been taken and sealed up on the 9th of January only; and 5th. That the said deposition of the said Gordon N. Peay is in the proper hand-writing of the said George 0. Watkins, who is the attorney of record for the said defendant, as appears by the annexed affidavit, which is made a part of these exceptions. In respect to the first exception, we are of opinion that the notice is the proper criterion from which the character of the depositions can be drawn, and that is, in express terms, that they are to be taken conditionally. If depositions are taken conditionally, or, in other words, to be used alone in the event that the personal attendance of the deponents cannot be procured, it is well settled that the depositions are not admissible until it is satisfactorily shown to the court either that such deponents are dead, or that due exertions have been made to procure their attendance, and that they have proved wholly unavailing. The second exception involves a mere abstract question, and therefore not necessary to be decided. The third has been fully disposed of whilst commenting upon the first. The fourth is well taken, as it is clearly the duty of the examining court to continue in session, and open to hear and receive testimony until the last hour specified in the last day mentioned in the notice. It is the undoubted right of the party notified to appear before the examining court, if he shall claim to do so, at any time before the expiration of the time specified in the notice. The 5th and last is equally well taken, as it is well settled that a deposition in the hand-writing of the party in whose favor it is offered, is inadmissible. These depositions suppressed, as they should have been, leave no sufficient evidence to sustain the issue for which they were offered. The fourth and last ground of defence is also unsupported by competent evidence. Watkins and Peay were the only witnesses who testified as to the fact of all the improvements having been made by the defendant since the purchase from the intestate. Their testimony was improperly received, and, as a matter of course, there was an utter failure upon that point. We have now passed upon every point that we conceive to be legitimately raised by,the record: questions relating to the right of dower in the improvements or in the enhanced value of the land in consequence of the same, and as to the proper basis upon which to estimate the value of the dower, whether the same is to be estimated in reference to the present value or the value when the lots were sold, or at the death of the husband, and as to damages to be recovered, are all reserved, as none of these legitimately arise upon the record before us, although discussed by the counsel for the appellant. Upon the whole case, as now before us, the appellant is entitled to dower, and we are therefore of opinion that it was error in the court below to refuse her prayer and dismiss her petition, and the decree must therefore be reversed. But as the merits of the cause are manifestly not sufficiently developed to enable this court to render a final decree, it must be remanded, and re-heard in the court below with leave to both parties to take additional testimony.