Jackson, *ex dem.* Ostrander and Ostrander, *against* Hasbrouck.

THIS was an action of *ejectment*, for lands in the town of *Plattekill*, in the county of *Ulster*. The cause was tried before Mr. Justice *Spencer*, at the *Ulster* circuit, in *September*, 1807.

The lessors of the plaintiff deduced a regular title from the year 1752, to the north part of the lot No. 1. in the patent, known by the name of *Bradley & Jevou's* patent. The lands in the patent, as appeared by the partition deeds, were divided in 1747, by the then proprietors, on an actual survey made at their request, by *John Eltinge*, a surveyor. *Abraham Hasbrouck*, the father of the defendant, and under whom the defendant claims, was a proprietor at the time, and had released, according to the said survey and partition, all his right to lot No. 1. in the north bounds of the patent, to *Van Horne*, under whom the lessors claimed. This release, a record of which was read in evidence, recited the agreement of the proprietors to make a partition, according to the survey of *Eltinge*, and after reciting the partition and survey, it referred to the map or chart of survey made by *Eltinge*, and particularly described the bounds of the lot, and the courses and distances, beginning at the north-east corner of lands granted to *William Huddlestone*. The plaintiff then produced evidence which established the north-east corner of *Huddlestone's* patent; and also a map and survey of lot No. 1. made by *Charles Clinton*, surveyor, according to the courses and distances given in the survey of *Eltinge*, by which the boundaries were different from that survey, and the premises in dispute, arising on these two surveys, were distinguished on a map, and submitted to the inspection of the court.

Where the proprietors of a tract of land made partition of it, in 1747, agreeably to a survey thereof made for that purpose by their request, and released to each other, by deed, their respective shares, according to the map and survey, and possession afterwards was taken and held agreeably to such survey, for above 20 years, it was held, that persons holding under the proprietors, were concluded by such survey and partition, although it should appear, by a subsequent survey in 1801, that there was a mistake in the first survey, on which such partition was founded; unless it should be proved that the proprietors had, afterwards, agreed to correct the mistake, and alter the boundary lines. The partition deed operates as an estoppel, as to the parties, and all persons claiming under them.

The defendant derived his title from *Abraham Hasbrouck*, to lands granted to *Bradley* and *Jamieson*, subsequent to the grant to *Bradley* and *Jevou*, and insisted that the premises were within the patent to *Bradley* and *Jamieson*, adjoining the north bounds of lot No. 1. and the north bounds of the patent to *Bradley* and *Jevou*, and that the adverse possession of the defendant barred the plaintiff's right of recovery. In order to show that the premises did not lie in the patent to *Bradley* and *Jevou*, the defendant produced a survey made by *Johannes Bruyn*, in 1801. *Bruyn* and *Clinton*, the surveyors, were both examined as witnesses ; but their testimony could not be understood, without a reference to the maps, and, in regard to the point decided by the court, it is unnecessary to state the evidence further.

The judge, in his charge to the jury, observed, that they were not to inquire into any mistake that might have been made by *Eltinge*, in his survey and partition, or as to the bounds of the patent to *Bradley* and *Jevou* ; that the parties to the partition deed, and all persons claiming under them, were concluded by the deed, and that the bounds of lot No. 1. as described in that deed, were to be taken as the true bounds thereof, unless altered by some subsequent act of the parties claiming under the partition deed ; that the witnesses did not prove that there had been any line settled between the parties interested, subsequent to the survey of *Eltinge* ; that the evidence respecting *Scutt's* line, and the old marked trees, was sufficient to establish *that* line as the northern boundary of lot No. 1. and that the lessors were entitled to recover to that line, and to *Scutt's* possession, which appeared to be according to the partition deed.

The jury, accordingly, found a verdict for the plaintiff.

A motion was made, in behalf of the defendant, to set aside the verdict, as against evidence, and because of the misdirection of the judge.

*Fisk*, for the plaintiff.

*E. Williams*, for the defendant,

ALBANY,
August, 1808.

Jackson
v.
Hasbrouck.

YATES, J. delivered the opinion of the court. In this cause, the lessors of the plaintiff deduced a title under a deed given to *Van Horne*, in virtue of a partition of a tract of land comprehended in a patent granted to *Bradley* and *Jevou*, made in the year 1747, by the then proprietors, of whom *Abraham Hasbrouck*, the father of the defendant, and under whom he claims, was one, who, by that partition deed, released, according to a survey then made at the instance of the proprietors, by one *John Eltinge*, and on which the partition was founded, all his right in lot No. 1. in that patent.

The defendant derived his title to the premises from *Abraham Hasbrouck*, as lying within the boundaries of an adjoining patent, granted to *Bradley* and *Jamieson*, subsequent to the patent of *Bradley* and *Jevou*, and claimed the premises on the ground of a mistake made in the original survey of *John Eltinge*. Thus, it appears, that the lessors of the plaintiff and the defendant both claim under separate persons, parties to this partition deed.

The first inquiry, therefore, will be, whether it was competent for the legal representatives of *Abraham Hasbrouck* to controvert the northern line of lot No. 1. in the survey by *Eltinge* of the patent to *Bradley* and *Jevou*, by setting up a title under the patent to *Bradley* and *Jamieson*.

By the release of partition between the proprietors, it will appear, from the recital, that they agreed to make a division agreeably to the survey of *Eltinge*. This being a deed, under their hands and seals, must, as between the parties to this instrument, be a complete establishment of the line run by that survey, so that the inquiry for the jury, under those circumstances, on the trial of this cause, could only be, whether *Eltinge*, by his survey, comprehended the premises in question, within the boundaries of lot No. 1. This survey was, by the judge

before whom the cause was tried, properly considered as operating as an *estoppel* against the defendant, and concluded him from controverting the northern line of lot No. 1. on the ground of a mistake in that survey, alleged to have been discovered by the other survey, made in 1801. Admitting even, that a mistake was made by *Eltinge*, in his survey, yet as the proprietors by the deed, have recognised the lines run by him, and made partition accordingly, and as the defendant claims under one of them, he cannot now gainsay an act thus deliberately assented to, and subscribed by him ; nor can this mistake be rectified, unless done by a subsequent agreement of the parties.

The propriety of the rule of law, whereby parties or privies are not allowed to controvert facts admitted by their solemn deed, appears in this case. The mistake was made in the survey of another lot, containing ten chains too much; so that the loss occasioned by this mistake would exclusively fall on the proprietors of lot No. 1. and thus create an inequality in the partition.

An attempt was made to prove an agreement as to the northern line of this lot, but instead of an abandonment of the possession of the lands lying between the lines of *Bruyn* and *Eltinge*, the witness said that he considered the land to be his, up to a fence, standing on a line called *Scutt's* line, confessedly south of *Eltinge's* line, and as far north as the lessors of the plaintiff recovered on the trial ; that he never gave it up, but meant some day to try the title to it, notwithstanding the removal of the fence by *Abraham Hasbrouck ;* and that one year subsequent to such removal, he took the avails of the land ; so that, in fact, no evidence was introduced of an alteration by agreement, in relation to the lines of No. 1. or the northern line of the patent, as run by *Eltinge*. This line was recognised as the true boundary, by the partition deed between the proprietors, has been so generally received, and possession of the premises in question held for upwards of twenty years under it, and ought not now to be disturbed.

The case of *Skipwith* v. *Green*, (1 *Str.* 610.) does not support the principle contended for by the defendant's counsel, but establishes, that with respect to every essential part of the deed, the parties claiming under it are estopped from controverting it.

The court are of opinion, that the defendant must take nothing by his motion.

THOMPSON, J. not having heard the argument in the cause, gave no opinion.

Rule refused.